## CITY OF LYNN vs. INHABITANTS OF NAHANT.

The ands within the limits of a town established by the government of the Massachusetts Co'ony, which had not been granted by the government either to the town or to individuals, were not held by the town as its absolute property, but, by virtue of its establishment and existence as a municipal corporation, for public uses, with power by vote of the freemen of the town to divide them among its inhabitants, yet subject to the paramount authority of the General Court; and, upon its division by the General Court into two towns, were held in like manner by that town within whose limits they fell, unless expressly otherwise provided.

Votes of a town, granting annually to individuals the right to take clams and shells from beaches within its limits for a certain sum to be paid to the town, and providing for the preservation and repair of the beaches, are no evidence of an absolute title in the town to the beaches.

Conveyances from the Indians of their aboriginal title, in the time of the Colony or Province, without the license or approbation of the General Court, were void.

Since the incorporation of the town of Nahant by the St. of 1853, c. 114, the city of Lynn has no title to that part of Long Beach, connecting Lynn with Nahant, which lies within the town of Nahant.

WRIT OF ENTRY to recover Long Beach, now within the town of Nahant, and within the ancient boundaries of Lynn. Trial by jury was waived, and the case was heard by *Gray*, J., who made a report thereof, in substance as follows :

It was admitted that the average height of the natural crest of the beach above ordinary high water mark was six feet, and that the length of that part of Long Beach now within the town of Nahant, being the demanded premises, was 7580 feet, and of the part still remaining within the boundaries of Lynn, 1500 feet.

The demandants offered the following records and documents, which were admitted subject to the tenant's objection, and reserving the question of their competency :

1. Records relating to the town of Lynn, from the first volume of the Massachusetts Colony Records :

July 5, 1631. " It is ordered there shalbe levyed out of the severall plantations the somme of thirty pounds for the makeing of the creeke att the newe towne, viz." : [Assessing Saugus and nine other towns.]

May 9, 1632. " It was ordered that there should be two of every plantation appointed to conferre with the court about raiseing of a publique stocke " : [Naming two persons for Saugus and seven other towns respectively ]

November 20, 1637. · " Saugust is called Linn."

March 13, 1638–9.  " It is ordered, that the bounds betwixt Salem and Linn shall begin at the cliffe by the sea where the water runs, as the way lyeth from Linn to Marble Head, and run upon a straight line to the long pond, by the ould path that goeth to Linn, at the south end thereof next to Linn, and the whole pond to bee in Salem bounds ; and from that pond to run upon a straight line to the iland in Mr Humfreys pond, and from that iland to run upon a straight line to 6 great pine trees marked, called by those 6 men that layed out the bounds, the 6 Mens Bounds : and from those trees to run upon a straight line unto another little pine tree marked, by the side of a little hill beyond the trees, to run upon the same line, so farr as our bounds shall reach into the countrey."

March 13, 1638–9.  " Linn was granted 6 miles into the countrey, and Mr Hauthorne and Leift. Davenport to veiw and informe how the land beyond lyeth, whether it may bee fit for another plantation or no."  " Mr John Oliver, Mr Robert Keayne, and Richard Sadler are appointed to run the bounds betweene Boston and Linn."

September 9, 1639.  " The petition of the inhabitants of Linn for place for an inland plantation at the head of their bounds is granted them 4 mile square, as the place will affoard, upon condition that the petitioners shall within 2 years make some good proceeding in planting, so as it may bee a village fit to conteine a convenient number of inhabitants, which may in dewe time have a churche there, and so as such as shall remove to inhabite there shall not withall keepe their accommodations in Linn above 2 yeares after their removall to the said village, upon paine to forfect their interest in one of them, at their owne election, except this court shall see just cause to dispence further with them ; and this village is to bee 4 mile square at least, by just content."

2. Extracts from records of the town of Lynn since 1691, (it being admitted that the earlier records of the town were destroyed by fire in that year,) showing that on June 23, 1691, " It was voted Mr Hubbard of Branttry should give three shillings for every twenty tunn of rock mine that hee has from Nahant to the town for the town's use and hee to have soe much as the

town sees convenient " ; a vote of October 18, 1695, choosing a committee " to defend the inhabitants of the town in the lands called Nahants," in a suit brought by Mrs. Mary Daffine in the Inferior Court, *post*, 438 ; votes from 1698 to 1704, imposing fines upon any persons cutting down trees on Nahant; and frequent votes between 1709 and 1774, granting to persons named the right for a year to all the shells, or clams and shells, upon Nahant Beach, for a certain sum to be paid to the town; and in various years afterwards, appointing committees to take care of the beaches, providing for the repair and preservation of the beaches, and prohibiting all persons not inhabitants of the town from carrying off sand, shells, stones or seaweed from the beaches.

3. A deed dated September 4, 1686, acknowledged May 31, 1687, and recorded June 28, 1704, from David Kunkshamooshaw and other Indians, reciting that they were the nearest of kin and legal successors of " old Sagamore George No Nose, so called, alias Wenepawweekim, sometime of Rumney Marish, and sometimes at or about Chelmsford, of the Colloney of the Massachusetts, so called, sometimes here and sometimes there, but deceased," " whom wee affirme was the true and sole owner of the lands that the townes of Lynn and Reading stand upon, and notwithstanding the possession of the English dwelling in those townships of Lynn and Reading aforesaid, we the said " grantors " doe lay claim to the lands that these two townes aforesaid Lynn and Reading stand upon and the dwellers thereof possess, that the right and title thereto is ours and belongs to us and ours; but howsoever, the townships of Lynn and Reading having been long possessed by the English, and although we make our clayme, and the selectmen and trustees for both townes aforesaid pleading title by graunts of courts and purchase of old of our predecessor George Sagamore and such like' matters, &c., we the claymers aforenamed," " considering the arguments of the selectmen in both townes, are not willing to make trouble to ourselves nor old neighbours in those two towns aforesaid of Lynn and Reading ; " and therefore, in consideration of the sum of sixteen pounds sterling paid to the grantors " by Mr. Ralph King, William Bassett, Senr., Mathew Farrington, Senr., John Burrell, Senr., Robert Potter, Senr., Samuel Johnson, and Oliver Purchas, selectmen

in Lynn in the County of Essex in New England, trustees and prudentials for and in the behalf of the purchasers and now proprietors of the townships of Lynn and Reading," " doe hereby acquit, exonerate and discharge the said Mr. Ralph King, William Bassett, Senr., with all and every of the selectmen afore named, trustees and prudentials, together with the purchasers and now proprietors of the said townships of Lynn and of Reading, their heirs executors administrators and assignes forever ; " " and by these presents doe fully, freely, cleerly and absolutely give and grant a full and firm confirmation and ratification of all grants of court and any sort of alienation formerly made by our predecessor or predecessors, as alsoe all our owne clayme of right, title, interest and demand,.unto them the said Mr. Ralph King, William Bassett and the rest, selectmen forenamed, trustees and prudentials for the Town of Lynn, and the Worshipfull Mr. John Browne, Col. Jeremiah Sweyn and Leiut. William Harsey, trustees and prudentials for the Town of Reading, to their heirs and assigns forever, to and for the sole use, benefit and behoofe of the purchasers and now proprietors of the Towneships of Lynn and Reading aforesaid, etc. All the said Townships of Lynn and Reading joyning one to another, even from the sea, where the line beginneth between Lyn and Marblehead, and so between Lynn and Salem as it is stated by those Townes and marked, and so to Ipswich river, and so from thence as it is stated betwixt Salem and Reading, and as the line is stated and runne betwixt Wills hill, and as it stated and runne betwixt Reading and Andover, and as it is stated betwixt Oburne and Reading, and as it is stated and runne betwixt Charlestowne, Maldin, Lynn and Reading, and upon the sea from the line that beginneth Lynn and Marble and Salem to divide the Townes aforesaid, so as well from thence to the two Nahants, viz. the little Nahant and the great Nahant as the sea compasseth it about round, and soe to the river called Lynn river and Rumney Marish river or creeke unto the line from Brides brooke to the said creeke, answering the line that is stated between Lynn and Boston from the said bride brooke up to Reading." " To have and to hold all the said Townships of Lynn and Reading, as well the two Nahants aforesaid, the little and the great Nahant, as they are encompassed

by the sea, with their beaches from the great Nahant to the little and from the little Nahant homeward where Richard Hud now dwelleth, and so to Mr. Kings," "unto the said Mr. Ralph King, William Bassett and the rest, selectmen in behalfe of Lynn, and the Worshipful Mr. John Browne and the rest aforenamed for Reading, all trustees and prudentials for the Towneships of Lyn and Reading, to them and their heirs and assignes forever, to and for the sole use benefit and behoofe of the purchasers and now proprietors of the said Towneships of Lynn and Reading : " With covenants of seisin and right to convey, quiet enjoyment, general warranty, and for further assurance.

4. Records of the proceedings in a case in the County Court in Essex and in the Court of Assistants on appeal in 1657, and again upon review in both courts in 1678, in which Thomas Dexter sued the inhabitants of Lynn " in an action of the case concerning the title and interest of the said Thomas Dexter unto a parcell of land or ground commonly called Nahant, and for trespasse done thereon by keeping of cattle and cutting wood and giveing out lotts for building of houses and planting thereon, to the injury of the said Thomas Dexter ; " in which successive verdicts and judgments were rendered for the defendant.

Also certain depositions on file in that case, the substance of which is stated in the answer of the inhabitants of Lynn to the petition of Mary Daffine to the Governor and Council, *post*, 443–446, note.

5. Copies, from the archives of the Commonwealth, of proceedings before Governor Andros and his Council in 1687–88, which are printed in the margin.*

---

* (1.) PETITION OF EDWARD RANDOLPH TO GOVERNOR ANDROS.

To his Excellency, Sir Edmond Andros, Knight, Governor, &c.

The humble petition of Edward Randolph, that there is a certaine tract of land nigh the Towneship of Linn, in the County of Essex, in this His Majesty's territory and dominion, out of fence and undivided, containing about five hundred acres, commonly called Nahant Neck, for which your petitioner humbly prayes His Majesty's grant, and that your Excellence would please to issue a warrant to the Surveyor Generall to admeasure the same, in order to passing

Lynn v. Nahant.

6. This record: "At an Inferior Court of pleas holden at Sa-
lem December 31, 1695. Mrs. Mary Daffine and Mrs. Martha

a pattent, he paying such moderate quitrent as your Excellence shall please to
direct for the same.    And yr Petnr etc.                    Ed Randolph.

(2.) ORDER OF NOTICE OF THE GOVERNOR AND COUNCIL THEREON.

Att a Councill held in Boston on fryday the third day of February 1687.
Present.    His Excey Sir Edmund Andros, Knt, &c.

| Joseph Dudley | | | John Hincks | |
|---|---|---|---|---|
| Will Stoughton | | | Nathanl Clark | |
| Robt Mason | | Esqrs. | Edwd Randolph | Esqrs. |
| Tho. Hinckley | | | Franc: Nicholson | |
| John Usher | | | Saml Shrimpton | |
| Barth: Gedney | | | Will Browne | |

Upon reading this day in Councill the petition of Edward Randolph therein
praying his Majesty's Grant of a certaine tract of vacant land lyeing nigh the
Towne of Lynn in the County of Essex commonly called Nahant Neck con-
teyning about five hundred acres.

Ordered that the constables of said towne or either of them on receipt
hereof do give publique notice in the said Town of Lynn that if any person or
persons have any clayme or Pretence to the said land they appeare before his
Excye the Governor in Councill on Wednesday the Seventh of March next
then and there to show forth the same and why the said land may not be
granted to the Petitioner as desired and that they fail not therein and to make
due returne.             By Order in Councill &c.

John West, D. Secry.

Received this order from the hands of Jeremiah Belcher the 2d day of this
Instant March 1687-8 and according thereunto have given publique notice of
the matter ordered therein this 5th of March &c.  By mee,

John Edmonds, Constable in Lyn.

(3.) ANSWER OF THE COMMITTEE OF THE TOWN OF LYNN THERETO.

To his Excellency, Sir Edmund Andros, Knight, and our Honourable Gov-
ernour, with his Honourable Councill to sitt with him, on Wednesday the
Seaventh of this instant March 1687—8.

Having received an order upon the second day of this instant March, that
orders our constables of Lynn, or either of them, to give publique notice in the
said towne of Lynn, of a petition of Mr. Edward Randolph, Esq., read in a
Councill held in Boston, on the third day of February, 1687, praying his Maj-
esty's graunt of a certayne trackt of land, therein called vacant land, lying
nigh the towne of Lynn, called Nahant, &c. as alsoe that if any person or
persons have any clayme or pretence to the said land, they appear before his

Padishale of Boston, widows, and heirs of Richard Woodey of Boston, deceased, plaintiffs versus John Atwills junior of Lin in

Excellency in Councill, on Wednesday the seaventh of this instant March, to show forth the same, and why the said land may not bee granted to the petition, &c.

Wherefore, wee, the proprietors of the pasture of Nahant, and inhabitants of Lynn, have, in duty and obedience to our present and Honorable Governour, and his Honourable Councill, presented before them as followeth.

Imprimis: Our humble and most thankfull acknowledgment of the favour showed unto us, in giving us notice of such an enterprise, as whereby, should it take effect, would soe extreamly indalmage so many of His Majesty's good subjects at once; whereby wee conclude His Excellency our Honourable Governour and His Honourable Councill are such as will search for and doe justice, and mayntayne the cause of the innocent, weake, and poore, as wee humbly and sinceerly acknowledge ourselves to bee; and yet being clearly satisfied of our just right in the trackt of land petitioned for, have good hope our honourable rulers will, of clemency and justice, adhere to, hear and weigh reasons heerein presented, why wee cannot comply with Mr. Edward Randolph's petition for the alienation of our Nahants; which, wee humbly conceive, is groundlessly represented to be a parcell of vacant land, and therefore must apply ourselves to demonstrate to our Honourable Governour and his Honourable Councill the contrary. And although the tyme is very short indeed for us to lay before your Honors to vindicate our just right to our Nahants, yet our endeavors shalbe as effectuall as wee can in soe short a tyme as wee have to bethink ourselves, and show your Honours that it is not vacant land, and that the proprietors have a true and just right thereunto: Wherefore wee present your Honours as followeth.

That wee have in our records, that in the yeare 1635, this tract of land, viz. our Nahants, was in the hands of the then freemen of Lynn to dispose of; whoe did then graunt unto severall inhabitants lands to plant, and build upon, and posesse; and, if they did not performe the conditions, they, to whome it was graunted, forfeited the land soe graunted to the towne agayne, to dispose as shalbe thought fitt; and among those to whome those lands were graunted, that worthy and honourable gentleman, Mr. Humfreys, was one, whoe was a patentee and an Assistant in the first Government; therefore, sure it was the townes land ther     That those inhabitants that did build and dwell there, they were tribuaries, or tennants, and paid their yearly rent to the towne as long as they lived, or were removed by the towne, as to instance, one Robert Coates, yet living to testify it.

There have beene some that have layed a clayme to this land called Nahant, and commenced siewt at law with the towne for it, but were cast at law, the Court that then was gave the towne the case, justifyed the townes right, never denyed it, nor blamed them about it.

an action of trespass of trespass on the case etc. according to **writ**
dated September 30, 1695. The plaintiffs being called three

This trackt of land, it hath beene divided into planting lotts to the severall
proprietors, by the voat of the towne as appears in our records Anno 1656,
and the whole fenced as a common field, and of the lotts beene improoved
by the proprietors, in planting, tilling and manuring: and afterwards by the
agreement of the proprietors, converted into a pasture; and so ever since to
this day improoved; so we have by hard labour and industry subdued it, and
brought it into so good a capacity as it is at this day, for the townes future
benefitt and none others.

Wee have honestly purchased the said trackt of land with our money, of
the orrigionall proprietors of the soyle, viz. the Natives, and have firme con-
firmations thereof, under hands and seals, according to law.

We have posessed and improoved the said trackt of land upwards of fifty
years, for soe long since it hath beene built upon, inhabbited by tennants
paying their acknowledgments yeare after yeare.

Wee hope Arguments of this nature wilbe swaying with so rationall a com-
monwealth's man as Mr. Randolph, who hath ever pretended great respect to
his Majesty's subjects among us, and an earnest care and designe to promote
their welfare and prosperity. The premises considered, we beleeve a gentle-
man, under such circumstances, will not bee injurious, by seeking a particular
benefit, to impoverish and disadvantage soe many of His Majesty's good sub-
jects, by seeking the alienation of such a trackt of land, soe emminently use-
full and needfull for those proprietors now in possession of it — it being a
thing so consistent with His Majesty's pleasure, that his subjects should enjoy
their properties and flourish under his government.

We are confident, therefore, that his Honourable Councill wilbe solicitous
for the promoting our welfare, as not to suffer us to be impoverished by the
alienation of such a considerable trackt of land, as this will doe, if it should be
alienated — yea, wee are bold to say agayne, extreamly prejudiciall, if not im-
poverish the body of the inhabitants of Lynn who live not upon traffique and
trading, as many sea-port townes do, who have greater advantages, but upon
husbandry, and raising such stocks of cattle and sheep as they are capable,
and as their outlands will afford: for this our Nahant is such a place for us
as God and nature hath fitted and accommodated with herbage; and likewise
the only place about us for security for our creatures from the teeth of the
ravening wolves; which, this last summer, as well as formerly, have devoured
very many that fed in other places about us, to the very great dalmage of sun-
dry of our inhabitants accordingly. Therefore the said trackt of land hath
beene improoved by the proprietors as a grazing field with great benefit to the
body of the whole towne, which otherwise would bee exposed to great hard-
ships, inconveniencies and difficulties to obtayne a poore living; and **therefore**

times made default and are nonsuited. The judgment of the court is that plaintiffs pay unto defendants costs."

wee cannot but be deeply sensible, that if the said pasture be alienated from us, our poor familyes wilbe very great sufferrers, and wee shalbe rendered very uncapable, either to provide for them or to contribute such dues and duties to His Majesty's Government set over us, which otherwise wee might be capable of, and shall alwaies readily and carefully attend unto our utmost capacity.

And we trust our Honourable Governour and his Honourable Councill will show us the favour, as in their wisdoms to weigh and consider well our dutifull application to their order, to give inn and show our reasons why we clayme this said trackt of land to bee our right, as not to suffer any alienation of that which wee doe soe much need for our great comfort and benefitt; but rather grant us further confirmation thereof, if need require.

And thus wee the proprietors of the trackt of land, even our Nahant, that is petitioned for, have taken notice of your Honour's order, and have this fift day of March, 1687—8, made choice of a committee, to consider what is meete to lay before your Honours, and of messengers, to appear and present the same to your Excellency our Honourable Governour and your Honourable Councill; which, if these things are not satisfactory, wee then in humillity crave the favour of His Excellency and His Honourable Councill for such a tryall and processe as the law may admit of in such a case, where persons are in possession of lands, as we are of this said trackt, having tennants therein; and further time and opportunity being granted, wee doubt not but wee shall produce such valid confirmations of our true and honest title to said trackt of land, as shalbe abundantly satisfactory to our honoured rulers, and put a period to further debates about it. So wee rest and remayne, His Majesty's most loyall subjects, and your Excellencyes and Council's most humble servants :

The Committee
{
Thomas Laughton, senior
Ralph King
John Lewis
Oliver Purchis
John Burrill
Edward Richards
John Fuller, senior
}

In the name & behalfe of the Proprietors of Nahant.

(4.) RECORD OF TOWN MEETING OF LYNN, ABOVE REFERRED TO.

At a Towne meeting held 24th last moneth, 1656. It was Voated That Nahant should bee laid out into Planting Lotts and that every householder should have equall in the Dividing of it, noe man more then another and every person to clear his of wood in six years and hee or they that doe not clear their Lotts of the wood shall pay fifty shillings as a fine for the Townes use: Alsoe every

7. The following petition, dated November 1, 1861, and signed by a committee of the town of Nahant : " To the Honorable the

householder is to have his and their Lotts for seaven yeers and it is to be laid downe for a pasture for the Towne and in the seaventh every one that'l ath Improoved his Lott by planting shall then (that is in the seaventh yeare) Sow then lotte with English Corne and in every acre of land as they Improove they shall with their English Corne sow one bushell of English Hay seed and soe proportionable to all the land that is Improoved, a bushell of Hay seed to one acre of Land: and it is to be remembred that noe person is to raise any kind of building there at all. And for laying out of this land, there is chosen Francis Ingols, Henry Collins, Senior, James Axee, Adam Hawckes, Lieutennt Thomas Marshall, John Hathorne, Andrew Mansfeild.

This above written is taken out of the Townes book of Records
                                           pr me Oliver Purchis, Cleric. in Lyn.
Lyn the 6th of March, 1687–8.

(5.) PETITION OF INHABITANTS OF LYNN TO GOVERNOR ANDROS.

To his Excellency Sr Edmond Andros, Kn't, our Honorable Governour, Captayne Generall off his Majesties Territory & Dominion of New England : The Humble Address of the Inhabitants of Lynn is humbly offered.

Wee whose names are subscribed having by the favour of your Excellency good Information of the endeavours of some to seeke the Alienation of a Trackt of land from us Called the Nahants Conteining about fowre or five hundred acres, which will prove extreamly prejudiciall and Injurious to the body off his Majesties good Subjects among us, It being a Trackt of land Honestly purchased off the Natives the Orrigionall proprietors of the Soyle and possessed by our predecessors and ourselves neare upon sixty years and to this day, whoe have alsoe renewed confirmations of the Trackt of land by firme Deed from the successors of the Ancient proprietors the Natives: Having alsoe beene at great cost and charges and hard labour for the subduing off the said land to bring it Into soe good a capacity as it is in at this day: Having alsoe defended our right to this Trackt of land as well as others possessed by us by blood and the losse of many lives, both formerly and espetially in the last Engagements with the barbarous pagans : The said trackt of land having beene built upon alsoe, and Inhabitted upward of fifty years, It hath been ploughed, planted, tilled and manured, fenced Inn: the fence remayning to this very day, only wanting repayration: None, ever to this day, from the first settlement of our plantation (called formerly by the name of Sawgus) dispossessing of us ; but have maintained our possession and right; which hath beene owned and defended, by his Majesties former Government Sett Over us : The said trackt of land being alsoe Emminently beneficiall and needfull for the support of our Inhabitants, It being improoved for a Grazing field, for Sheep and such other usetull creatures as

Mayor, Aldermen and Common Council of the city of Lynn. Your petitioners, a committee of the town of Nahant, would respect-

can scarcely bee preserved from the Ravening wolves. Therefore wee are sencible, that by the Alienation off such a Tractt of land from us, soe Circumstanced. many of his Majesties good subjects, our honest, Innocent neighbours, wilbe exposed to very great suffrings and hardships; and wee all rendred uncapable to contribute such dues and duties to his Majesties Government .ett over us as is our Bounden duty, and which wee shall alwaies Readily attend. Knowing how consistent it is with his Majesties pleasure and how well pleasing to your Excellency that wee may live and prosper under your Government: Wee request your Excellency therefore to condescend to cast a favorable Aspect upon the premises: And that our mean and Shattred Condition may not Induce your Contempt, But rather Obtein your pitty and succour : And therefore wee confide in your Excellencyes favor for an Incouradging answer to this our petition which is for the further and future Injoyment of our Nahants, By your Excellencyes fatherly and compassionate Graunt off such a Pattent for further Confirmation thereof unto ourselves and heirs for Ever, upon a moderate acknowledgment to bee paid to his Royall Majestie, as may bee consistent with your Excellencyes prudence, and most conducing to our best behoofe and benefit, and soe that wee may live and prosper under your Government: Soe wee rest His Majesties most Loyall Subjects, your Excellencyes very humble Servants and Petitioners, praying for such Success to the affaires of your Government, that wee may have Tranquillity under the same, from henceforth. The Second day of April Anno Dom. One thousand six hundred eighty and eight Annoq. Regnj Regis Jacobi Secundj quarto.

| | |
|---|---|
| Oliver Purchis | Samuel Johnson |
| Ralph King, Senr | John Fuller |
| John Burrill, Senr | Thomas Laughton, Senr |
| Mathew Farrington, Senr | Robert Pottar, Senr |
| Edward Richards | Robert Coats |
| John Lewis, Senr | Clement Coaldum |
| | [and seventy-two others.] |

(6.) ANSWER OF INHABITANTS OF LYNN TO PETITION OF MARY DAFFINE.

To his Excellency Sr Edmund Andros, Knt, Captn Generall and Governour in Chiefe off his Maj'ties Territory and Dominion of New England:

The humble congratulation and thankfull acknowledgment of his Excellencyes favour unto the poore and afflicted Inhabitants of Lyn in the County of Essex In giving them the knowledge and the obtaining of the Coppy of a petition of Mary Daffeine widdow preferred the 28th of March 1688 wherein it is said (examined by Joan West Secr'y) therefore true, and it is for a Pattent for a Tractt of land therein said to bee in the township of Lynn, Called Nahant;

fully represent that the committee in the division of the common
lands in Nahant did leave on the westerly end of Little Nahant

by which Petition or Coppy the said inhabitants doe see great reason to take
the boldnes to present some Reply, and certayne objections by them to be made
against the Graunt of the said Petition, with Reasons which are most Humbly
Offred.

Impr : Because as Mary Daffeine saith, in her petition, That her Grand-
father Thomas Dextar Purchased this trackt of land called Nahant, Lying
within the township of Lynn, of the Indians more than fourty years since: soe
wee say That we by our predecessors purchased it off the Indian that was
then, by all good circumstances of Testimonyes, The Only propper Proprietor
viz Black William, fifty and seaven years past; off this our Honest Captn
Richard Walker lately deceased, a man known by your Excellency, hath left
testimony upon Oath: Now may it ̇please your Excellency If Mary Daffeine
Can Evince and legally proove that her Grandfather Thomas Dextar Legally
Bought that Tract of Land off the propper and true owner, before that time
Testfied aforesaid By Captayne Richard Walker, Shee will doe more than her
Grandfather Thomas Dextar could doe in his lifetime, for if hee could hee
would have done it, hee did his utmost, But if hee did Purchase it after that
time It was but to Endeavor a Cheat of the Towne, by the Indians. But the
towne, as it was then called, viz. Sawgus, Even soe long since Our Predeces-
sors purchased it of the then Reputed Owner, viz. Black William, and had then
the possession of it and Ever since; and soe with all true respect and confidence
in your Excellencyes Justice; hoping your Excellency will Judge that such as
went to make a cheat, it should bee to themselves and not to the Innocent
towne of Lynn.

2. Whereas she saith in her Petition that the said Thomas Dextar fenced
the said land and improoved it by feeding many years : To that wee Confi-
dently say Hee never did that by himselfe. But might doe his proportion
with qther proprietors, therefore noe reason hee or his successors should have
had more right then his proportion, If he had never surrendered, therefore
we pray her petition bee not graunted.

3. Because, If the said Thomas Dexter had any right In Nahant by fencing
of it and feeding, it was Joint with other Old Inhabitants, never entire by
himselfe; and how ever it was, yett hee the said Thomas Dextar with the other
old Inhabitants did surrender up all their Rights to the towne, as doth appeare
by the testimonyes of Captayne Richard Walker, George Keasar and Clement
Coaldum, and alsoe Mr Humfreys, whoe had a great Intrest therein and was a
Pattentee, did alsoe surrender up his Intrest there to the towne in generall,
And in their soe doing they made it our property, and soe is very Consistent
with his Majesties Gratious Declaration That wee should Injoy our properties
and not have them alienated from us: and alsoe because Sqr. Randolph and

so called, a certain piece of land over which the highway now runs, for the purpose of repairs on said way and beaches, as your

widdow Daffeine doe acknowledge in their petitions that the said trackt of Nahants is within oure township of Lynn and soe is our Property, and pray it may not be alienat.

4. Because, if shee the said widdow Daffeine hath gotten a Deed (now) that her Grandfather could never produce or did never at the least, And therefore sate quiett soe many years as he did before he made any press. By what hand shee hath gotten it now, of whose making it was, or what time it was made, or for what end now conveyed to her by whomsoever at this unexpected time: yet if that bee a rule of law now, which we understand from among our Rulers Lawyers, viz, that if it be not under hand and seal off some of the pattentees, it is of noe force : Therefore wee are confidently perswaded hers hath none, And then of noe force, not to compare with our Records and possession, which wee trust shalbe considered by equallity and without partiallity and therefore bee Confirmed to us ; whoe had a pattentee to concurr in the disposing Of this trackt of land to our Inhabitants: and therefore pray that it bee not graunted to her.

5. Because, as wee doe Humbly and most thankfully acknowledge, wee have seen such testimonies off your Excellencyes Justice and righteousness toward us hitherto as causeth us to conclude your Excellency will not suffer an Alienation from us off such a trackt of land so considerable and out of our township; and which was first yielded up In its minority for promoting a township to be heere; and will bee soe much dalmage and Injury to soe many of his Majesties good subjects by Impoverishing them soe as to disable them of a comfortable supporting of their familyes — yea put the whole town upon such difficulties as will extreamly tend to their poverty and debility to performe and discharge publique duties both in civill and Ecclesiasticall affaires, which wee Humbly beg your Excellency not to permitt.

6. Because as wee understand by the statutes of England, That after a person hath had soe many tryals and beene alwaies cast, hee shalbe debarred of pursuing any further: But concerning this, your Excellency knoweth more then wee all, wee being ignorant in those lawes. Therefore confide in your Excellencys Justice and care of his good subjects whose eies are upon and hope for your help in soe weighty and Just a matter, as wee account this; wherefore wee pray your Excellencyes help in this. Furthermore, may it please your Excellency, wee have evidence sufficient to proove That the said Thomas Dextar acknowledged theis Nahants to bee the towns land, by Clement Coaldums testimony, as alsoe by his comming to a towne meeting as wee conceive and think severall yeares after the fencing that widdow Daffeine speaketh of in her petition, and desires the towne to give him liberty to have the running out of the pines at Nahant (viz. to make Tarr) But the towne would not graunt his request. This is testifyed, and helps to proove that it was the towns land

petitioners fully believe, and whereas certain individuals have trespassed on said land by erecting fences and taking gravel and stone therefrom, and whereas in the separation of the town of Nahant from the city of Lynn, Nahant was to receive its proportional part of the city property, and whereas those lands were not included in the settlement with the city of Lynn, the fee simple

then; and his owne acknowledgment of it, or else, Why would Thomas Dextar come to the Towne.meeting to desire that liberty of them: If it were his owne, Noe need to aske the town the use of his owne; Therefore the townes. The Inhabitants thereof pray your Excellency not to alienate it from them now.

As touching our possession, wee have formerly signified to your Excellency: wee have had it from the first begining of the township (when it was called Sawgus) and so to this day, none ever dispossessing us: And if it may please your Excellency to consider, It was in the minority of this corporation: when Legall conveyances according to Law was not minded: few of those that came were acquaynted with the law: nor made any questions doubts or scruples but Intended honesty : never understood any necessity of getting signings and sealings from Pattentees: But looked that the Charter graunted to them and their heirs and Associates was firme for Ever.

But to avoyd future Inconveniences of that nature, the Law of possession was made. And from that time it tooke place wee accounted our right firme by that. As accounting that by the Law of England it was the best title, and hope that your Excellency will overlooke all weaknesses in the minority, and Justify what is Just and honest.

And whereas Mary Daffeine widdow petitioneth your Excellencyes favour to graunt her a Pattent for confirmation of the said Neck of Nahant, To her heirs and assignes for ever, to be holden of his Majesty, his heirs and successours upon some moderate acknowledgment or Quit rent &c. To that wee say: wee that did soe long since purchase it by our predecessors shalbe as Ready to shew our Loyalty and Readiness to acknowledge his Majesty and pay a moderate Quit Rent as shee or any other persons whatsoever can bee. Soe we rest, Craving pardon for all our Impertinences, weaknesses and Rudeness, and a favourable consideration of our request. Soe wee shalbe Ever engaged to pray

Thomas Laughton, Senior
John Fuller, Senior
Oliver Purchis
Ralph King
Edward Richards
John Burrill
John Lewis
The Committee for the Inhabitants of Lyn.

now belongs to the city of Lynn and the town of Nahant.   Your
petitioners would therefore ask of the city government to quit-
claim by deed their interest in said lands of Nahant."

This petition was admitted to relate to the pasture or upland
at the end of the beach, and was drawn up after the decision of
the Superior Court and before the decision of this court in the
case of *Simmons* v. *Nahant*, 3 Allen, 318.

The tenants put in evidence, subject to the demandant's objec-
tion, extracts from the records of the town of Wenham, estab-
lished by the General Court in 1643, 2 Mass. Col. Rec. 44, and
of the town of Beverly, established in 1668, 4 Mass. Col. Rec.
pt. ii. 407, and both previously parts of Salem, showing that in
the latter part of the seventeenth century each of those towns
made grants of lands within its limits.   It was admitted that no
grant was made by Salem to Wenham or Beverly of any lands
within their boundaries.

The tenants also put in evidence the Sts. of 1848, c. 200, 1852,
c. 214, and 1854, c. 294, regulating the taking of seaweed, sand,
stones, gravel and mud from the Long Beach and other beaches
in Lynn and Nahant; the St. of 1853, c. 114, incorporating the
town of Nahant; the record of the division of the common lands
of Lynn in 1706 ; an award between the city of Lynn and the
town of Nahant in 1853; an agreement of settlement between
them in 1854; and other documents ; none of which need be
stated.

It appearing that the decision of the case depended mainly
upon the construction and effect of written evidence, the case was
reserved, by consent of the parties, for the decision of the full
court upon so much of the facts and documents above stated as
should be held competent and admissible, with power to draw
such inferences as a jury would be warranted in drawing, and to
enter judgment for either party.

This case was argued in January, 1873.

*T. H. Sweetser & A. Jones*, for the demandants.

*W. C. Endicott*, for the tenants.

GRAY, C. J.   Upon the settlement of the Massachusetts Col-
ony, the several towns or plantations were at first mere villages

or clusters of settlers dwelling near each other; but by successive acts of the General Court, authorizing them to manage their own affairs and to elect representatives and local officers, they soon became in effect municipal corporations, without any express legislative act or charter. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 485. Between 1630 and 1635 they were directed to provide arms for their inhabitants, powder-houses, standard weights and measures; to levy taxes; to cause to be made and recorded a survey of all lands improved, or inclosed, or granted by special order of the General Court; and were authorized to choose deputies to the General Court; to mend corn fences which they should judge to be insufficient, and to make orders concerning swine going at-large. 1 Mass. Col. Rec. 84, 87, 106, 110, 116, 118, 119, 120, 148, 150. On September 3, 1635, "it was ordered that none but freemen shall have any vote in any town, in any action of authority or necessity, or that which belongs to them by virtue of their freedom, as receiving inhabitants, and laying out of lots, &c." Ib. 161. And on March 3, 1635-6, it was "ordered that the freemen of every town, or the major part of them, shall only have power to dispose of their own lands and woods, with all the privileges and appurtenances of the said towns, to grant lots, and make such orders as may concern the well ordering of their own towns, not repugnant to the laws and orders here established by the General Court," and with penalties not exceeding twenty shillings; "also to choose their own particular officers, as constables, surveyors for the highways, and the like." Ib. 172.

The lands within the limits of a town, which had not been granted by the government of the Colony either to the town or to individuals, were not held by the town as its absolute property, as a private person might hold them, but, by virtue of its establishment and existence as a municipal corporation, for public uses, with power by vote of the freemen of the town to divide them among its inhabitants, yet subject to the paramount authority of the General Court, which reserved and habitually exercised the power to grant at its discretion lands so held by the town. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 500. *West Roxbury* v *Stoddard,* 7 Allen, 158, 169, 170. *Tappan* v. *Burnham,* 8 Allen.

65. *Boston* v. *Richardson,* 13 Allen, 146, 149, 150, and 105 Mass. 351, 357. 1 Mass. Col. Rec. 240, 271, 277, 305, 310, 327. 2 Mass. Col. Rec. 61. 4 Mass. Col. Rec. pt. ii. 10, 109, 111.

Lands so held by a town, merely by virtue of being within its municipal bounds, necessarily, upon its division by the General Court into two towns, were held in like manner by that town within whose limits they fell upon the division, unless the General Court expressly provided otherwise. This is illustrated by the cases of Wenham and Beverly, mentioned by the tenants at the trial; of Brookline, 9 Gray, 466, note; and many others in 1 & 2 Prov. Laws, (State ed.) *passim.*

The proceedings in the courts of the Colony and before the Governor and Council, offered by the demandants, (assuming them to be competent evidence,) afford no proof of any express grant of lands from the Colony to the town of Lynn; but, at most, only show that Nahant was within the bounds of Lynn, that the town of Lynn had from 1635 the power to dispose of it among the inhabitants, and had constantly occupied it accordingly, and that Thomas Dexter and his heirs had no title to it.

All the votes of the town of Lynn, as to the cutting of trees on Nahant, the taking of shells, seaweed, gravel or stones from the beaches, and the preservation and repair of the beaches, were consistent with the same tenure, and had no tendency to show any other title in the town.

The deed from the Indians in 1686 purports upon its face to be only a release or confirmation of titles already held by the town of Lynn or by the proprietors of the lands; and all conveyances from Indians of their aboriginal title, without the license or approbation of the General Court, were of no validity whatever. 1 Mass. Col. Rec. 112. 5 Mass. Col. Rec. 486, 487. Prov. St. 1701, (13 W. III.) *c.* 11; 1 Prov. Laws, 471. *Brown* v. *Wenham,* 10 Met. 495.

By the St. of 1853, *c.* 114, incorporating the town of Nahant, that part of the Long Beach which is demanded in this action is included in the town of Nahant; and by the St. of 1854, *c.* 294, the Legislature conferred such powers upon the selectmen of Nahant as had formerly been conferred by the St. of 1852, *c.* 214,

upon the municipal authorities of Lynn, and enacted that no person should "carry away or remove, by land or water, any seaweed, sand, stones, gravel or mud from either of the beaches called Long Beach or Little Beach, in the town of Nahant," without permission first obtained from the selectmen of Nahant, or from some person authorized by them.

The petition of a committee of the town of Nahant to the city of Lynn in 1861, introduced by the demandants, has no legal tendency to prove a title in Lynn to the Long Beach ; because it relates to other lands ; and because it does not appear to have been authorized by the town of Nahant.

In *Simmons* v. *Nahant*, 3 Allen, 316, it was merely decided that lands assumed to be the corporate property of Lynn did not pass to Nahant by its act of incorporation without a deed. The question, whether the land in dispute in that case was the property of Lynn before the division, does not appear to have been raised ; and, as we were informed by the late Chief Justice Chapman, who delivered the opinion in that case, and was present at the argument and the first consultation in the case now before us, was not considered by the court.

In *Berry* v. *Raddin*, 11 Allen, 577, the question was of the validity and effect of a grant made by the town of Lynn to an individual in 1633.

In *Commonwealth* v. *Roxbury*, 9 Gray, 451, 487, there was an express order of the General Court in 1636, that " all the rest of the ground lying betwixt Dorchester bounds and Boston bounds " (" except the propriety of the aforesaid town, which they purchased of particular persons ") " shall belong to the town of Roxbury ; " and the point adjudged was that " supposing this to be a grant of property in land," it did not include the flats below low water mark.

The cases of *Rogers* v. *Goodwin*, 2 Mass. 475, and *Gloucester* v. *Gaffney*, 8 Allen, 11, did not relate to towns, but to proprietors of common lands. In *Rogers* v. *Goodwin*, the point decided was that, under the authority given to proprietors of common lands by the Prov. Sts. of 1692–3, (4 W. & M.) *c.* 28, and 1712–13, (12 Anne) *c.* 9 ; 1 Prov. Laws, 65, 704 ; to " dispose " of their

lands, they might sell to a stranger; and the Colony law of 1636, above quoted, was referred to only as an instance of a similar use of language. In *Gloucester* v. *Gaffney*, the point decided was, that a vote of proprietors of common lands, to give certain of their lands to the town, was *primâ facie* evidence of title and seisin in the proprietors at the time of the vote. In the case at bar, as both parties admit, there is no evidence that the proprietors of common lands in Lynn ever acquired a title in fee in the demanded premises, or undertook to convey any to the town.

In *Windham* v. *Portland*, 4 Mass. 384, the point decided was, that the town was not discharged, from its legal obligation to support a pauper having a settlement there, by a separation of part of its territory by annexation to another town or by a new incorporation. The general statement in the opinion, that " it would continue seised of all its lands, possessed of all its personal property, entitled to all its rights of action, bound by all its contracts, and subject to all its duties," evidently relates to lands of which it had the absolute ownership, and by no means affirms that those include all the lands within its original territory ; and the court had not then had occasion to examine the question of the right and authority of a town over such lands so fully as in the recent cases.

As we are of opinion, for the reasons already stated, that the demandants, upon the evidence introduced by them at the trial, show no title to that part of the Long Beach which lies within the town of Nahant, it becomes unnecessary to consider the effect of the division of the common lands in 1706, or of the award and agreement of settlement between Lynn and Nahant since the incorporation of the latter. *Judgment for the tenants.*